DENT & CADE *vs* CHILES, adm'r.

1. The *mere refusal* to deliver property in the *legal* possession of one, is not, of itself, a conversion in law; though an *absolute*, unconditional and unqualified refusal would create such *inference* of conversion as to authorise the action of trover.
2. A demand of one, having the *lawful* possession of goods, may be met by such *qualified* refusal as to rebut the presumption of a conversion sufficient to maintain trover.
3. Evidence of declarations, by a defendant, in trover, at the time of a demand, shewing a reasonable qualification of, or excuse for, his refusal, founded in fact, would be admissible, as testimony—if the *Court* were first apprised, that such declarations tended to establish the fact, that such qualification or excuse were made.
4. In trover, the reasonableness and truth of a qualification of, or excuse for, the non-delivery of property demanded, are for the determination of the jury.

This was an action of trover, in Marengo County Court, by Henry Chiles, the administrator of the estate of Hatch Dent, against Gilford Cade and Tabitha Dent; and was prosecuted for the recovery of six slaves, alleged to have been converted, by the defendants, to their own use.

The declaration was in the usual form, consisting of several counts; and on the trial a verdict was rendered in favor of the plaintiff; and judgment given accordingly.

On the trial below, a bill of exceptions was taken, on which the defendant prosecuted a writ of error to this Court. The bill of exceptions shewed these facts.

The plaintiff introduced one Adams, as a witness, who proved, that the plaintiff made of the defendants a demand of the property sued for, before the commencement of this suit—whereupon, the defendants offered to prove, by the said witness, the reply which the defendants made to the plaintiff, at the time of the demand ; but this the Court refused to permit, on the ground, that to permit evidence of the defendants' declarations, at the time of the demand made, would be enabling the defendants to make evidence for themselves.

The plaintiff further proved, that at the time the demand was made, the defendants omitted to deliver the property sued for—whereupon, the defendants offered to prove by the same witness, the reasons they, the defendants, alleged, for not delivering said property, when demanded ; but, this the Court also refused to permit, for the reason above assigned.

Witnesses were also introduced by the plaintiff, who proved that Tabitha Dent, one of the defendants, was the widow of the plaintiff's intestate ; and that Guilford Cade, the other defendant, was her brother. That, after the death of the plaintiff's intestate, the property sued for, remained in the possession of the said Tabitha, for a short time, when the sheriff of Marengo County, by virtue of several executions in his hands, levied upon all the slaves, sued for, but left them in the possession of the said Tabitha, upon the promise of the said Guilford Cade, and one Thomas Anderson, that they would be responsible for their forthcoming, when necessary, to satisfy said executions. That afterwards, the sheriff, with the assent of the said Anderson and Cade,

and for the purpose of saving the expense of keep-ing said slaves, hired them out, for two months: Cade was not present, when the said slaves were hired: part of the hire, when received, was paid to the plaintiff, and part to the said Tabitha Dent, one of the defendants; and that no part was paid to Cade, the other defendant.

It was also, proved, that the sheriff agreed to dis-charge the levy he had made on the negro slave, Maria, and her children, mentioned in the plaintiff's declaration, upon the said Guilford Cade, and the aforesaid Samuel Anderson, agreeing and promising that they would produce a negro girl, named Nan-cy, who had likewise been levied on, and a negro boy, named Tom, mentioned in the plaintiff's decla-ration; and that they were, subsequently, pursuant to said promise, delivered and sold.

It was further proved, that the plaintiff's intestate, at the time of his death, left no provision for his fa-mily; and that his widow, the said Tabitha, was compelled to leave the place of her husband's resi-dence, on account thereof.

It was further proved, that about the time the hire of the said negroes expired, the said Tabitha went to reside with the said Guilford, her brother, and took her two children with her; and the said negroes went there also, about the same time; but it was not proved, who took them there, nor at whose direction.

All the foregoing facts and circumtances, as pro-ved, took place before any administration of the es-tate of the plaintiff's intestate.

5 s. & p.      49

It was also proven, that the said slaves were taken away, or sent from the residence of the said Guilford Cade, before any demand by plaintiff: but, by whom they were taken away, or who sent them off, was not proven.

. Upon this state of facts, the Court charged the jury, that a demand by the plaintiff, and a failure on the part of the defendants, to deliver the property sued for, was tantamount to a demand and refusal to deliver; and that a demand, and refusal to deliver, was a conversion in law.

The plaintiff did not prove, on the trial, that he disclosed to the defendants, the character or right, in which he demanded the property, at the time he made it; nor did he prove on the trial, that he was the administrstor of the said Hatch Dent, by the production of the letters of administration, or otherwise.

The Court instructed the jury, in reference to these facts and circumstances. that it was not necessary for the plaintiff to prove, that he disclosed to the defendants the character or right in which he demanded the property at the time of making the demand, unless the defendants required him to do so, or adverted to his authority: and that, under the plea of the general issue, filed by the defendants, it was not necessary for the plaintiff, to prove, on the trial, that he was administrator of the said Hatch Dent. To all which the defendants excepted.

*Vandegraaffe*, for the plaintiff in error.
*Stewart*, contra.

LIPSCOMB, C. J.—This was an action of trover, brought by the administrator of H. Dent, against the plaintiff in error, Tabitha Dent, and against Guilford Cade—the last named died since error was assigned—to recover the value of two negro slaves. There was a verdict and judgment for the plaintiff.

The principal errors relied on, for reversing the judgment of the Court below, are supposed to have occurred, in refusing to permit the defendants to ask of a witness, who was called by the plaintiff, and who proved a demand of the property, " what answer they, the defendants made, when the property was demanded :" and secondly, in the charge given by the Court, which is extracted from the bill of exceptions, in the following words: " The Court charged the jury, that a demand by the plaintiff, and a failure by the defendants to deliver the property sued for, was tantamount to a demand and a refusal, and that a demand and a refusal to deliver, was a conversion in law."

These were the only points relied on, by the plaintiff's attorney, in the argument of the cause.

To return to the first point. It was contended, that the refusal to deliver on demand, is only presumptive evidence of conversion, and that the defendants below ought to have been permitted to rebut such presumption, by proving a disclaimer of all right, or in another way, to show that they had not converted it to their own use. That the defendants, without setting up any right in themselves, might well have questioned the right of the plaintiff to demand it of them. That if the defendants had come law-

fully into the possession of the property, it was nothing more than their duty to require a production of the authority of the plaintiff to make the demand.

In 3d Campbell, 215, it is said, "that if A, into whose hands goods happen to come, being ignorant that B is the real owner, refuses to deliver them to him, until B proves that he is so, this refusal is no evidence of a conversion to enable B to maintain trover against A, for the goods."

*3.Camp.*　In *Greene's* case,[a] being trover for timber, which the defendant found on his premises, and which had been deposited there, by the permission of the servants of the former occupier—the plaintiff, to whom the timber belonged, having demanded it of the defendant, the latter said, "If you will bring any one to prove it is your property, I will give it you, and not else." Lord *Ellenborough.*—"*This is a qualified refusal, and no evidence of a convertion.*"

From this authority it appears that the refusal, to make it evidence of a conversion, must be unqualified. If one is found in the possession of the property of another, and he give no excuse for not delivering it, when demanded, but gives an unqualified refusal, the inference would be strong, that he was not exercising merely a proper degree of prudence, to prevent its falling into the hands of one that had no right to claim, but, that he was disposed to appropriate it, by conversion, to his own use. On the other hand, if he surrendered the property to the first claimant, without inquiring into his right to demand it, the presumption would be strong, that he had acquired the possession dishonestly.

DENT & CADE *vs* CHILES, adm'r.

It is the every day's practice, when goods have been found, for the finder to give notice, by public advertisement, calling on the owner to come forward and prove his property; and if, in such case, the finder only requires an ordinary shewing to create a presumption in favor of the claimant, and refuses, if this is not done, such‾ qualifica ion of a refusal would surely be proper testimony to go to a jury, to rebut any implication of a conversion, arising from the refusal—and whether the excuse given for failing to deliver, was a reasonable one or not, the jury would determine.

In the case of *Alexander* vs *Southy*,[a] the goods were the property of the plaintiff, and had been taen from his house, in the time of a fire, and carried, by the servants of an insurance company into a ware-house, of which the defendant, a servant of the company kept the key, and the defendant, on being applied to by the plaintiff, to deliver them up, refused to do so, without an order from the company. It was held, that this was not such a refusal as amounted to a conversion of the goods, by the defendant.

The case was taken before all the judges of King's Bench, on a motion for a new trial, and they were unanimous in refusing the new trial.

*Best*, J., before whom the cause was tried, said, that he had left it to the jury, to say whether the qualification of the defendant's refusal was a reasonable one—that, if so, he was of opinion, there was no sufficient conversion.

The opinion of *Holroyd*, J., is so clear and distinct, and, withall, quite brief, that I can not refrain from giving it entire.

[a] 7 Searg. & L. 85.

The learned judge says, "I think the verdict in this case was right. In point of law, the goods were only in the custody of the defendant, and in the possession of his employers, the insurance company  If we were to hold this refusal to be a conversion, it would go this length, that if a person were to call at a gentleman's house, and ask his servant to deliver goods, and the servant was to refuse to do so, unless a previous application was made to his master, it would amount to a conversion, on the part of the servant.  In this case, the goods came into the defendant's possession lawfully, and the refusal was only till an order is obtained from the defendant's employers.

•1Wils.328    " In *Parkins* vs *Smith*,[a] the defendants received the goods wrongfully, at first, and the conversion was by an actual sale of them.  Now, it is clear, that the authority of the master would not amount to a defence of that which was altogether a tortious act of the servant.

•2Mod.242    " The case of *Mires* vs *Soleby*,[b] is an authority in point: there the servant refused to deliver back some sheep, which were on his master's land, and it was held to be no conversion, on his part."

The principle of this case is, that if there is a reasonable qualification, accompanying the refusal, such refusal will not, by implication of law, amount to a conversion.  The servant was in the lawful possession of the goods, and he had a right to know to whom, and on what authority he was to deliver them up.  The jury are to judge of the reasonableness of the qualification of the refusal, on the part of the defendant.  If it were unreasonable, a mere pretext or

evasion, it would be treated as an unqualified refusal, and subject the defendant to the full influence of the implication of law, resulting from such refusal.

In *Watt* vs *Potter*,[a] Judge *Story* says, "The first question is, whether there has been a conversion in this case: this is a question of fact to be judged of by the jury, under all the circumstances. A demand, and a refusal to deliver, is not of itself, conversion, but it is evidence, from which a jury may presume a conversion.

"When a demand is made by an agent, and the party refuses to deliver to the agent, either because he has no authority, or declines to produce it: such a refusal, under such circumstances, is not even evidence of a conversion; for, every person in possession of property, has a right to retain it, until it is demanded by some person having, and, if required, producing, competent authority to demand it."

The learned judge adds, " But, if the refusal do not turn upon the supposed want of authority, if the party waives an inquiry into the authority, or admits its sufficiency, and puts his refusal upon another and a distinct ground, which can not, in point of law, be supported, there the refusal, under such circumstances, is presumptive evidence of conversion. If, for instance, the party puts his refusal upon the ground, that the property is his own, or that he has a lien upon it, and such claim is unfounded; or, if his objection to a delivery be frivolous, or fraudulent, then he can not shelter himself from the legal presumption of a conversion, which his unjust refusal authorises.

" Whoever undertakes tortiously to deal with the

2 Mason, 78.

property of another, as his own, or tortiously detains it from the owner, is, in contemplation of law, guilty of a conversion."

What was said, in reply, by the defendants, to the demand, might, under the rules laid down in these cases, have been proper testimony, if it amounted to a reasonable excuse or qualification of such refusal: as, if the defendants had said, show us by what authority you make the demand, or satisfy us, that you have a right to make it, and we will deliver the property; or any other reasonable excuse, that repudiated a conversion of the property by them.    But, the question, as presented, leaves it altogether uncertain what that reply was.

As a general rule, a party is not authorised to give his own declarations in evidence, in his own favor. If the reply was such as made it an exception to this rule, and amounted to a reasonable qualification of the refusal, the party wishing the advantage of such exception should have shown it.    By informing the Court, what the nature and purport of that reply was, if proper testimony, the Court would have been bound to allow it to go to the jury.    It is the Court's province to guard the jury from the reception of illegal testimony, lest it should have an influence, notwithstanding it may be afterwards withdrawn from them; and the practice is to take the opinion of the Court, on the admissibility of testimony, any ways doubtful, before offering it to the jury.    If improperly rejected by the Court, the party injured has his remedy in the revising Court.

From the general terms used in propounding the question, it was right to reject it.    But, had the de-

fendants said to the Court, " We wish to prove, by this witness, that when the demand he has proven, was made, we said in reply, show us by what authority, you make the demand; or, that you are authorised to make it, and we will deliver the property;" or any such like qualification of the refusal, there could have been no question of the propriety and admissibility of such testimony.

Having disposed of the first ground of error relied on, we will proceed to the examination of the second. The substance of the second is, that the Court charged the jury, that refusal to deliver, was of itself, conversion in law.

It is not shewn from the evidence, that the defendants obtained the possession of the property sued for, tortiously. So far from it, their possession seems to have been legal. But, if this were not the case, we have seen, in the preceding authorities, that a refusal is, at most, only the evidence of conversion. An unqualified refusal, in the opinion of Mr. Justice *Best*, would be incontrovertible evidence of conversion. Strong, however, as his language is, it stops short of making the refusal, *per se*, a conversion.

The defendant in error, for the purpose of sustaining the charge of the Court, on this point, has referred us to Saunders on Pleading and Evidence, 2d vol. page 413, where there is a reference to *Baldwin* vs *Cole*,[a] in which Lord *Holt* said, " that the denial of [6 Mod. 212] goods to him who has a right to demand them, is an actual conversion, and not evidence of it merely ; for, what is a conversion, but assuming upon oneself the property in, and the right of disposing of anoth-

er's goods; and, whoever detains another man's goods, without cause, takes on himself the right of disposing of them."

We have no opportunity of examining the case in 6th Modern Reps. and can not derive any advantage from any peculiarity of circumstances in the case to which his lordship applied the rule of law as laid down by him. But, it may be inferred from Saunders's notice of the case, that the qualification, accompanying the refusal, was not a sufficient excuse in law, for non-delivery, and the refusal would certainly be evidence, strong and conclusive, in the absence of all other testimony of a conversion.

The opinion of Lord *Holt,* is subject to many exceptions, it seems to me, independent of its being wholly unsupported by other authority. It confounds cause and consequence—the evidence of a fact with the fact itself. It assumes that the person demanding the property is always duly authorised to make such demand, and that the person in possession, is always bound to know the rightful owner. But to show the fallacy of the rule as laid down, it is only necessary to revert to the conclusion of the sylogistic reasoning of that opinion, and enough will be found, in a parenthesis to subvert the whole argument.

After laying down the rule, that refusal is conversion, itself, he adds, " for what is conversion, but assuming in one's self the property in, and right of disposing of, another's goods ?" He then makes the application : " and, whoever detains another man's goods, (*without cause,*) takes on himself the right of disposing of them." The words " *without cause,*" if

dropped from the sentence, would leave the rule, as laid down, to operate in every case of refusal, to the entire exclusion of every excuse recognised as a reasonable qualification to such a refusal, by the authorities we have before noticed. But, the retention of those words, in the parenthesis, ("without cause,") at once shows that testimony must be let in, to show the nature of that *cause* for detaining the property, when demanded: and, if so, refusal is not conversion, but only the evidence of it. I, therefore come to the conclusion, that the dicta of Lord *Holt*, can not be regarded as of sufficient weight to overturn all the other authorities, on this subject; and that it must have been intended to be confined to some strongly marked, and peculiar features, in the case that gave it birth.

It appears from the statement filed by consent of parties, that the record does not contain all the testimony. There may have been much contradictory evidence, balancing between a rightful and a tortious possession, in the defendants; and, in such a case, it would have been the peculiar and appropriate province of the jury, to determine which it was. If the possession was legal, many qualifications to a refusal may be imagined, that would have rebutted the presumption of conversion.

The charge of the Court would have excluded from the consideration of the jury, every circumstance of excuse for the non-delivery, that might have been offered.

The correct rule of law, we believe to be, that an absolute refusal creates an inference in law, that there has been a conversion. That, if there is a rea-

sonable qualification, founded in truth, of the refusal, the presumption of conversion does not follow; and, that the jury must judge of the reasonableness and truth of such qualification. These qualifications are all predicated on a legal possession of the property in the defendant, not coupled with right of property. If the possession is tortious, the wrong-doer is not entitled to offer such excuses.

We are, therefore, of opinion, that, on the last point made by the counsel for the plaintiff in error, the judgment must be reversed and the cause remanded.